GENERAL COURT, OCTOBER TERM, 1803.

## HARPER vs. HAMPTON.

This was an action of *assumpsit.* The declaration contained *nine counts.* 1st. *Count,* on a *special agreement*, viz. That before and at the time of the agreement, to wit, on the 25th of August 1794, at *Columbia,* in the state of *South Carolina,* to wit, at *Baltimore* county, a certain *Jacob Rumph* was seized in fee simple and possessed of 150,000 acres of land, situate in the fork of *Edisto,* in the said state of S. C. and being so seized and possessed did, for certain good and valuable considerations him thereunto moving, and by a certain letter of attorney duly executed under his hand and seal, authorise and empower the plaintiff, as attorney for him the said *Rumph,* and in his name, to sell and dispose of the said lands, and by a good deed of conveyance to convey the same to such person, and for such sum of money, or other payment, as he the plaintiff should think fit, and the money, or other payment, to arise and grow due from the said sale and land, to take and receive to and for his the plaintiff's own proper use and behoof, of which the defendant had notice. And that afterwards, on the same day, &c. at *Columbia,* in the state of S. C. aforesaid, to wit, at *Baltimore* county aforesaid, the said *Rumph* being so

Where there are issues in fact and in law, the last shall be tried first

Where to a plea of limitations the plaintiff replies '*beyond seas,*' to wit, in another state, a rejoinder of the act of limitations of such other state is a departure from the plea, and fatal on demurrer.

*Quere.* Whether a contract made in another state, to which limitations there would be a bar, can be recovered on here, if such defence be properly pleaded?

Oct 1803.

Harper
vs
Hampton

seized, &c. and the said plaintiff being by him the said *Rumph* so authorised, &c. a conversation was had and moved between the plaintiff and defendant of and concerning the sale and purchase of the said land; and it was then and there agreed by and between the plaintiff and defendant, that the plaintiff should forthwith sign, seal, and duly execute, to a certain *John Hall* of the city of *Philadelphia*, a good and sufficient deed of conveyance, in the name of the said *Rumph*, and by virtue of the power and authority aforesaid, of and for the said land, &c. and should then and there deliver the said deed to the defendant as an *escrow*, to be by him the defendant delivered to the said *Hall*, in case he the said *Hall* should purchase the said land from the plaintiff, by and through the agency of the defendant, and should well and truly pay, or secure to be paid, the purchase money therefor to the defendant, to and for the use of the plaintiff, and not otherwise. And further, that the defendant forthwith, after receiving the said deed, should use his endeavours to sell the said land for the plaintiff to the said *Hall*, through his means and agency, for a good and suitable price; and in case of making such sale, should receive and take the purchase money of the said land, or other payment therefor, for the use of the plaintiff, and should thereupon deliver the said deed to the said *Hall*, and should forthwith pay and deliver the said purchase money, or other payment of and for the said land, to the plaintiff, and well and truly account with and to him therefor, whenever after he the defendant should by the plaintiff be thereunto required. And further, that the plaintiff should allow and pay to the defendant, to be deducted and retained out of the purchase money aforesaid, all such reasonable and necessary expenses as by him the defendant should be incurred, paid or laid out, in and about the premises; and should also give to him the defendant a sufficient indemnity and counter security for all such warrantees or guarantees, as he the defendant should necessarily and properly enter into in and about the premises. *In consideration* of the performance of all

which stipulations, &c. by the plaintiff, by him agreed as aforesaid, to be done and performed on his part, the defendant then and there, to wit, &c. undertook, and to the plaintiff faithfully promised to do and perform all, &c. by him the defendant on his part stipulated and agreed as aforesaid, to be done and performed. And the plaintiff averred, that he did then and there, to wit, &c. sign, seal and execute, in the name and as the attorney of the said *Rumph*, and by virtue of the letter of attorney and power aforesaid, a good deed of conveyance of and for the said land, to the said *Hall*, in fee simple, sufficient in law to convey the same land to him the said *Hall*, and his heirs and assigns, and the said deed did then and there deliver to the defendant, as an *escrow*, to be delivered to the said *Hall*, in the manner, and on the terms and conditions, and for the purposes aforesaid; and that the defendant afterwards, to wit, on the 1st of October, in the year aforesaid, at *Philadelphia*, in the state of *Pennsylvania*, to wit, at *Baltimore* county aforesaid, in pursuance and by virtue of the agreement aforesaid, did sell the said lands to the said *Hall* in fee simple, for a certain large price, to wit, for the price of one shilling current money of *Pennsylvania*, equal to the like sum of current money of *Maryland*, for each and every acre of the said 150,000 acres of land in the said deed contained and conveyed, and did then and there receive the said purchase money of and from the said *Hall*, or of and from some other person for him or on his account, and by his orders, which said purchase money amounted in the whole to the sum of £7500 current money of *Pennsylvania*, which sum then was, and always since hath been, and still is, equal to and of the value of the like sum of current money of *Maryland*. That the plaintiff was always since the said 1st of October, and still is, ready and willing to allow and pay the defendant, and to permit him to deduct and retain, &c. all such reasonable and necessary expenses, &c. if any, &c. and also to give to the defendant a sufficient indemnity and counter security, &c. if any, &c.

*2d Count.*—Upon the same agreement, (omitting the setting out the title of the land in *Rumph*, and his letter of attorney, &c.)

*3d Count.*—Upon the same agreement, stating that the defendant sold the land for, and received *Morris and Nicholson's* notes in payment, &c.

*4th Count.*—Upon the same agreement, and that said notes were received in payment, &c.

*5th Count.*—*Indebitatus assumpsit* for 150,000 acres of land, &c. sold and conveyed.

*6th Count.*—*Quantum Valebat* for 150,000 acres of land sold and conveyed.

*7th Count.*—*Indebitatus assumpsit* for 150,000 acres of land sold and conveyed to *John Hall*, &c. for the use of and in trust for the defendant.

*8th Count.*—*Quantum Valebat* for 150,000 acres of land sold and conveyed to *John Hall*, for the use of and in trust for the defendant.

*9th Count.*—General *Indebitatus assumpsit* for money had and received, &c.

The defendant put in *nineteen* pleas to the declaration, viz:

1st. *Non assumpsit*, on which *issue* was joined.

2d. *Non assumpsit infra tres annos*, (act of limitations of *Maryland*,) to the 1*st count* in the declaration.

The *Replication* to the last plea was, that at the time when, &c. both the plaintiff and defendant did reside and were beyond the seas, and absent out of the *state of Maryland*, to wit, at *Philadelphia* in the *state of Pennsylvania*, one of the United States of *America*; and that the plaintiff continued to reside, and did remain beyond the seas, from the aforesaid time, until afterwards, to wit, on the 1st of July 1799, he returned and came into this state, to wit, at *Baltimore* county aforesaid; and that the defendant did also remain and reside beyond seas, without the limits of this state, and absent therefrom, to wit, at *Philadelphia*, from the time when he the defendant did assume, &c. until he afterwards, to wit, on the 1st of June 1802, returned and came into this state, to wit, at *Baltimore* county aforesaid, &c.

*Rejoinder.* That by a statute of the said *state of Pennsylvania,* enacted and passed on the 27th of March 1713, which at the time when the said preten-ded cause of action is alleged to have accrued, was, ever since hath been, and still is, in force in the said state of *Pennsylvania,* that is to say, at *Baltimore* county aforesaid, entitled *"An act for limitations of actions,"* it was among other things enacted in and by the said statute, "that," &c. (viz. that *actions on the case should be brought within six years after the cause of action accrued,) non assumpsit infra sex annos, &c.* *Demurrer* and *Joinder* thereto.

3d. *Actio non accrevit infra tres annos,* (act of limitation of *Maryland,*) to the 1st count. *Replication* and *rejoinder,* similar to those to the 2d plea. *Demurrer* and *joinder.*

The rest of the pleadings are omitted, because the question decided by the court turned solely on the demurrers which are stated, and demurrers to similar pleadings to the other counts in the declaration.

*Mason,* for the defendant, inquired of the court whether the *issues in fact,* or the *issues in law,* were to be first tried. He cited 4 *Bac. Ab.* tit. *Pleas and Pleading,* (No. 1.) *Co. Litt.* 72. a. 125.

*Martin,* (Attorney General,) for the plaintiff. The general rule is to try the issues in law first. Great inconvenience might result from the issues in fact being first tried; for if verdicts were found for the plaintiff on the issues in fact, and the court should decide in favour of the defendant on the issues in law, how could the verdicts be got clear of. He cited *Robinson vs. Rayley,* 1 *Burr.* 317.

THE COURT, [*Done* and *Sprigg,* J. *(a)*] determined that the issues in law should be tried first.

*Harper,* on the demurrers, contended—1. That the rejoinders are *departures* from the defendant's pleas;

(a) *Chase,* Ch. J. absent,

And 2. That if they are not departures, they are insufficient to prevent the plaintiff's recovery.

*First* as to the *departure*. The rejoinder should support the plea; if it were otherwise, controversy would be endless. 4 *Bac. Ab.* 122, tit. *Pleas and Pleading*. The act of limitations of one state cannot fortify that of another state. Where the party pleads any thing which could not have been shewn at first, it is no departure. But here the act of limitation of *Pennsylvania* might have been first pleaded. The plaintiff must confine himself to one cause of action, and the defendant must confine himself to one defence.

*Secondly*. The rejoinders are insufficient, admitting them not to be departures. The act of limitations of another state can never be pleaded so as to be a bar in this state. By the act of 1715, *ch*, 23, suits must be brought within a particular time, and not after. It is a prohibitory act to the courts of this state. The debt is not destroyed, but the remedy is taken away. The limitation goes to the remedy, not to the right. *Swayne et al. vs. Wallinger*, 2 *Stra.* 746. *Quantock, et al. vs. England*, 5 *Burr.* 2628. Where the *lex loci* destroys the right, but not the remedy, the debt can be recovered no where. But the laws of *Pennsylvania* do not extinguish the right to recover. He cited *Melan vs. Duke of Fitzjames*, 1 *Bos. and Pull.* 138. 3 *Bac. Ab.* 512. tit. *Limitation of Actions*. 6 *Mod.* 25. The plea of limitation is not favoured, but taken strictly by the courts. It cannot be pleaded after the rule day, nor amended, not being a plea to the merits of the case.

*Mason*, for the defendant. The plea of the act of limitations in some cases is a very proper plea. The reason why the courts have been so strict with regard to this plea, has been owing to the abuse of the act by persons pleading it who should not. The defendant has plead the act of limitations of *Pennsylvania* in his rejoinder, because of the mispleading of the plaintiff. The laws of the country, where the contract

was made, will govern both as to the right and the remedy. There is no departure on the part of the defendant. The departure is on the part of the plaintiff. The defendant pleaded the act of limitations of Maryland. The plaintiff replied, absence beyond seas, viz. in *Pennsylvania*, until, &c. That the cause of action accrued in a foreign country where both parties then resided. The defendant rejoins the statute of limitations of the state of *Pennsylvania*. To which the plaintiff has demurred. The declaration states a debt in *Maryland*, and the replication states a debt in *Pennsylvania*. This is a departure by the plaintiff. The replication admits the plea, but states new matter to entitle the plaintiff to recover. The defendant is therefore entitled to rejoin to the new matter. Suppose the replication had stated that the plaintiff was under age, when the cause of action accrued, and the defendant had replied that he was not under age, would not a collateral point have been put in issue? The plaintiff's action is barred unless he has brought himself within the savings of the acts of assembly of 1715, *ch.* 23, *s.* 3, *and* 1765, *ch.* 12. The savings of the acts relate to contracts made in this state, and not to contracts made elsewhere. The plaintiff is barred as well by the laws of *Maryland* as of *Pennsylvania*. He states in his declaration a contract in *Maryland*. The plea is a bar to that contract, and the plaintiff has admitted it, by resorting in his plea to another contract which he says arose in *Pennsylvania*. The rejoinder is a bar to the last contract. The replication in this case admits the plea, and does not bring the plaintiff within the savings of the act of assembly.

*Martin*, (Attorney General,) in reply. If there has been any defect in pleading, the court will resort to the commencement of the defect. *(a)*. The defendant has pleaded the act of limitations of *Maryland*. The plaintiff replied the savings of the acts of 1715 and 1765, to which the defendant, (going upon the

*(a)* See *Cook vs. Graham's* adm'r. 3 *Cranch*, 229.

supposition of the replication being good,) has rejoined the act of limitations of another state, when he should have denied the matters set forth in the replication, which would have been an affirmance of his plea; instead of which, he endeavours to defend himself by a different allegation. He might have pleaded in his plea the very matter he rejoined in his rejoinder. It is an evident departure, for he has abandoned his plea, and taken up new matter. The act of 1715, it has been said, is limited to contracts made in this state. If so, the defendant should have pleaded that the contract was made out of the state. But the act is not limited to contracts made in this state. The saving takes notice of all actions, and is as broad as the enacting clause. The court has jurisdiction of all contracts, no matter where made. Contracts are not confined to any particular country, but may be enforced in any country; and our act of limitations operates upon all contracts, no matter where they were made. It is the daily practice here to enforce contracts which have been made in other countries. If the enacting clause extends to such actions, the savings do also. This was never doubted until now. There is nothing in the replication to entitle the defendant to rejoin in the manner he has done. The place stated in the replication, where the plaintiff and defendant were when the cause of action accrued, is done to bring the plaintiff within the saving of the act of assembly. The substance in issue should be "were the plaintiff and defendant out of this state," &c. The act of limitations of *Pennsylvania* has nothing to do with the case. The defendant could only have pleaded originally that the cause of action accrued in *Pennsylvania*, and that by the law of that state the plaintiff was barred by limitations. But had the act of limitations of *Pennsylvania* been pleaded, it would not have barred the plaintiff's recovery. The bankrupt laws of *England* do not affect property of the bankrupt out of the kingdom. As to the inconvenience of a party's being arrested abroad—it is often the case, but we never see the plea of limitations

of another country pleaded. There is no such plea in the books. There is no limitation in *Great Britain* upon a *bond debt.* The party may give in evidence, upon the plea of payment, the length of time the debt has been due, and the jury may presume, from that length of time, that the debt has been paid.

Oct 1803.

Harper
vs
Hampton

Done, J. *(a).* A distinction has been taken between the *right* and the *remedy.* They are co-extensive, and if the remedy is barred it operates every where. The cases cited bear very slightly upon the case at bar. The defendant might have pleaded specially the act of limitations of *Pennsylvania.*

The suit is upon a cause of action said to have accrued in *Maryland.* The cause of action attached to the person, and follows the person. The act of limitation of *Maryland* has been pleaded by the defendant. The plaintiff to avoid it replied the savings of the act. This is correct pleading, and is not a departure from the declaration. The defendant introduces in his rejoinder the act of limitations of *Pennsylvania,* which is an abandonment of his first defence, and of course is a fatal departure.

The Court are therefore of opinion, upon each of the demurrers, that the rejoinder of the defendant is not in law a sufficient answer to the replication of the plaintiff in this cause, but that the matter alleged in the rejoinder is a departure from the plea of the defendant; and therefore the court give judgment for the plaintiff on the demurrers in this cause.

A juror was withdrawn by consent, and the cause continued.

*(a) Sprigg,* J. concurred.